**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ANA CHERI MORELAND, BRENDA　　：
LYNN GEIGER, CLAUDIA SAMPEDRO,　：
DESSIE MITCHESON, EVA PEPAJ,　　：　　　Case No. 3:19-cv-00958 (VLB)
JESSICA BURCIAGA, KEELEY　　　　：
REBECCA HAZELL, LUCY PINDER,　　：
PAOLA CANAS, ROSA ACOSTA,　　　：
SANDRA VALENCIA, JENNIFER　　　：　　　September 4, 2020
ZHARINOVA, MARKETA KAZDOVA,　　：
SARAH STAGE, AND VIDA GUERRA,　：
　　　Plaintiffs,　　　　　　　　：
　　　　　　　　　　　　　　　　：
　　v.　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　：
BESO LOUNGE & RESTAURANT LLC,　：
d/b/a BESO LOUNGE & RESTAURANT,　：
AND JOHN LARAIA,　　　　　　　：
　　　Defendants.　　　　　　　：

## RULING ON DEFENDANTS' MOTION TO DISMISS, [ECF NO. 32]

Before the Court is a Motion to Dismiss the Plaintiffs' Complaint, [ECF No. 1], pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by Defendants Beso Lounge & Restaurant, LLC, d/b/a Beso Lounge & Restaurant and John Laraia (collectively "Defendants"). [ECF No. 32].

Specifically, Defendants move to dismiss Count One of Plaintiffs' Complaint, sounding in false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), Count Four (state law claim sounding in false light invasion of privacy), Count Five (violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b *et seq.* ("CUTPA")), Count Seven (state law claim for conversion), and Count Nine (state law claim for quantum meruit) under Federal

Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted.  [ECF No. 32-1 at 1-19].

Defendants also move to dismiss all claims of Plaintiffs Keeley Rebecca Hazell, Rosa Acosta, and Sandra Valencia as time-barred under the various applicable statutes of limitations.  *Id.* at 19-24.

For the reasons set forth herein Defendants' Motion to Dismiss will be GRANTED-IN-PART.

## I.  STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility

2

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## II. ALLEGATIONS

In reviewing a motion to dismiss, the Court considers the allegations of the complaint to be true. *Hayden*, 594 F.3d at 161.

"[E]ach Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her [i]mages to companies, magazines and individuals for the purpose of advertising products and services." [ECF No. 1 (Complaint) ¶ 27].

"Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning

3

potential, book modeling contracts, and establish each of their individual brands." *Id.* ¶ 28. "In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model." *Id.*

"Each of the Plaintiffs' [i]mages was [used], and . . . altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Beso Lounge & Restaurant." *Id.* ¶ 29.

Defendants used Facebook and Instagram to disseminate images of each Plaintiff to the public. *Id.* ¶¶ 34 (Moreland), 37 (Geiger), 40 (Sampedro), 43 (Mitcheson), 46 (Pepaj), 49 (Burciaga), 52 (Hazell), 55 (Pinder), 58 (Canas), 61 (Acosta), 64 (Valencia), 67 (Zharinova), 70 (Kazdova), 73 (Stage), 76 (Guerra).

"In the case of every Plaintiff, such appearance [at Beso Lounge & Restaurant] was false." *Id.* ¶ 30.

"[I]n every case this [use] occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' . . . use of their [i]mages, and Defendants' . . . use of Plaintiffs' [i]mages have caused each Plaintiff to suffer substantial damages." *Id.* ¶ 31.

"Further, in certain cases Defendants [used] Plaintiffs' advertising ideas because the [i]mages they [used] came from Plaintiffs' own social media pages,

which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand."  *Id.* ¶ 32.

### III.  DISCUSSION

**A.**   **Count One (Lanham Act False Advertising)**

Defendants move to dismiss Count One of Plaintiffs' Complaint, sounding in false advertising under the Lanham Act, because "Plaintiffs have put forth zero facts in support of their allegations" in that "Plaintiffs have failed to even identify the alleged consumers," "there are no facts regarding the alleged deception of customers; no facts regarding effects on the purchasing decision on [sic] consumers; and no facts establishing consumer confusion."  [ECF No. 32 at 6-7]. "Instead Plaintiffs' claims are just the 'threadbare recitals of the cause of action' under the Lanham Act, which contain no facts, and are insufficient to establish a cause of action as a matter of law."  *Id.* at 7 (quoting *Iqbal*, 556 U.S. at 679). Moreover, according to Defendants, "Plaintiffs have failed to plead any facts showing proximate cause between the use of their likenesses and their damages claims," and therefore "Plaintiffs' first cause of action for false advertising under the Lanham Act should be dismissed."  *Id.* at 8-9.

Plaintiffs counter that Defendants improperly demand detailed facts supporting Plaintiffs' false advertising cause of action, but "[t]his of course is not the inquiry on a Rule 12 motion, as uncovering such facts and evidence is one of the purposes of discovery."  [ECF No. 36 at 3].  Moreover, Plaintiffs argue that

"section 1125(a) [of the Lanham Act] was intended for 'the protection of consumers and competitors from a wide variety of misrepresentations of products and services in commerce.  In enacting the section, Congress in effect created a new federal statutory tort.  The section is clearly remedial and should be broadly construed.'"  *Id.* at 3-4 (quoting *CBS, Inc. v. Springboard Int'l Records*, 429 F. Supp. 563, 566 (S.D.N.Y. 1976)).

> The Lanham Act authorizes a civil action against:
>
> (1) [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . .

by any person "who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(A)-(B).  This section creates "two distinct bases of liability: false association and false advertising."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  Plaintiffs claim both types. [ECF No. 1 ¶¶ 87-96 (Count One: False Advertising), ¶¶ 97-105 (Count Two: False

Association)].  Because Defendants only move to dismiss Plaintiffs' claims under the false advertising subsection, the Court will only discuss § 1125(a)(1)(B).

There are several threshold requirements for bringing a false advertising claim under the Lanham Act.  First, the "[t]o be actionable, the accused misrepresentation must be made in 'commercial advertising or promotion,'" 1 *False Advertising and the Lanham Act* § 1.01 (MB 2020), which means "widespread communication through print or broadcast media, . . . displays at trade shows and sales promotions to buyers," or other "activity to disseminate information to the public."  *Id.* (quoting *Fashion Boutique of Short Hills Inc v. Fendi USA Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)).  The Court has little trouble finding that this threshold requirement is met here, as Defendants allegedly posted each Plaintiff's image on its social media advertising portal(s), either Defendants' Facebook or Instagram pages, or both.  *See Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) ("although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.").

Second, "actionable misrepresentations under Section 43(a)(1)(B) are limited to false statements regarding the 'nature, characteristics, qualities, or geographic origin' of 'goods, services, or commercial activities.'"  *False Advertising and the Lanham Act* § 1.01 (quoting 15 U.S.C. § 1125(a)(1)(B)).  And, under this Section of the Lanham Act, "commercial activities" is interpreted

**7**

broadly to include not only the provision of goods and services, but also the use of profits associated with a commercial endeavor, and other activities.  *Id.* (citing *Proctor & Gamble Co. v, Haugen*, 222 F.3d 1262, 1270-73 (10th Cir. 2000)).  Here, use of the Plaintiffs' images on Beso Lounge's Facebook and Instagram pages concerns the "provision of . . . services," or at least constitutes "commercial activities" under the Lanham Act.

Third "(and obviously), a plaintiff bringing a false advertising claim must show falsity," *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016), either by demonstrating a challenged advertisement is false on its face or that the advertisement, "while not literally false, is nevertheless likely to mislead or confuse consumers."  *Id.* (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)).  "When an advertisement is false on its face or false by necessary implication, a court may grant relief 'without reference to the advertisement's actual impact on the buying public' because consumer confusion is presumed."  *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-cv-1308 (RJS), 2016 U.S. Dist. LEXIS 42261, at *12-13 (S.D.N.Y. Mar. 29, 2016) (quoting *Time Warner Cable, Inc.*, 497 F.3d at 153)).  Here, Plaintiffs adequately allege that Defendants' use of their images in advertising was false in that no Plaintiff appeared at or was in any way "affiliated with" Beso Lounge, but the posting of their image implied that they were affiliated with and endorsed the lounge.  [ECF No. 1 ¶¶ 84, 85].

8

In addition to these threshold requirements, plaintiffs asserting false advertising claims must also have standing under Article III and the Lanham Act. Under Article III, a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark*, 572 U.S. at 125 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Statutory standing under the Lanham Act requires a plaintiff's injury to fall within the "zone of interests" protected by the statute, which means "an injury to a commercial interest in reputation or sales." *Id.* at 131-32.  Statutory standing also requires that "violations of the statute" proximately caused a plaintiff's injury, *id.* at 132, which means "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.  Plaintiff and defendant need not be competitors for a plaintiff to have standing. *Id.* at 136.

Plaintiffs have adequately alleged Article III and Lanham Act standing. They claim to have suffered economic "injury-in-fact" because they were not paid for the unauthorized use of their images and because "any improper or unauthorized use of their [i]mages substantially injures their careers . . . insofar as each of Plaintiffs' [i]mages have been associated with a night club, and the implication of Defendants' use of Plaintiffs' [i]mages is that they are employees,

endorse a night club, or are otherwise associated or affiliated with a night club."

[ECF No. 1 ¶¶ 93, 94, 95].  As a court in this District recently held on similar facts:

> Plaintiffs have alleged an injury that has already occurred, damaged their reputation, and allegedly stemmed from the Defendants' alleged misappropriation of their images and photos, an injury which could be remedied through the awarding of damages.  These alleged injuries fall within the 'zone of interests' covered by the Lanham Act. *See Lexmark*, 572 U.S. at 133 ('The relevant question is not whether plaintiff's interest is 'reasonable,' but whether it is one the Lanham Act protects; and not whether there is a 'reasonable basis' for the plaintiff's claim of harm, but whether the harm alleged is proximately tied to the defendant's conduct.').

*Geiger v. C & G of Groton*, 424 F. Supp. 3d 276, 293 (D. Conn. 2019) (Bolden, J.). As to Article III standing, allegations of lost sales and damage to business reputation satisfy the 'injury in fact' Article III standing requirement, which is exactly what Plaintiffs have alleged here.

In sum, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark*, 572 U.S. at 140.  At this stage of the case, Plaintiffs have met this burden.  *Geiger*, 424 F. Supp. 3d at 294 (denying motion to dismiss Lanham Act false advertising claim on similar facts).

Defendants' Motion to Dismiss Count One for Lanham Act False Advertising is DENIED.

**B.      Count Four (False Light Invasion of Privacy)**

It is well-settled in Connecticut that there are four types of invasion of privacy:

> (1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye.

*Honan v. Dimyan*, 52 Conn. App. 123, 132 (1999) (quoting *Venturi v. Savitt, Inc.*, 191 Conn. 588, 591 n.1 (1983)).  The fourth type of invasion of privacy concerns us here.

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Restatement 2d of Torts* § 652E (1977); *Jonap v. Silver*, 1 Conn. App. 550, 557-58 (1984).  "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position."  *Jonap*, 1 Conn. App. at 558 (citing *Restatement*

*2d of Torts* § 652E cmts. b & c); *see also Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131 (1982) (same).

Defendants argue three grounds for dismissing this cause of action.  First, they claim that Plaintiffs have "put forth no allegations that the alleged false light of working at or endorsing the events at Beso Lounge & Restaurant would be found 'highly offensive to the reasonable person' or that such representation is such a major misrepresentation of any of the Plaintiff's character, history, activities [sic] as to be a serious offense."  [ECF No. 32-1 at 11-12].  Second, they argue that Plaintiffs have not "set forth any facts that Defendants [sic] actions were done in 'reckless disregard' for the falsity of the publicized matter."  *Id.* at 12.  Third, they argue that Plaintiffs allege no damages due to invasion of privacy by false light.  Defendants also argue that the four invasion of privacy torts have in common the general interest a person has in being "let alone," [ECF No. 32-1 at 10-11 n.3], which, Defendants argue, Plaintiffs cannot invoke as they have placed their images into the public eye through publication in international publications such as Playboy, Maxim, and others.  *Id.*

Plaintiffs counter that the false light invasion of privacy tort does not encompass a generalized right to be "let alone," but rather a right to be let alone *by the Defendants*, and that "the fact that [Plaintiffs] may license, for a fee, their image to other companies or brands does not somehow grant to [sic] free reign for any company to use Plaintiffs' intellectual property in advertising."  [ECF No.

36 at 5].  Plaintiffs also argue that they have adequately pled damages because "they have clearly alleged they have been damaged by, at minimum, being deprived of the compensation they should have been paid by Defendants but for Defendants' illicit advertising scheme."  *Id.* at 5-6.

As to Defendants' second argument that Plaintiffs have not adequately pled that Defendants acted with "reckless disregard" for the falsity of the publicized matter, the Court disagrees.   The requirement is that Plaintiffs plead that Defendants "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Restatement 2d of Torts* § 652E.  Plaintiffs allege that "Defendants *were at all times aware* that the Plaintiffs were neither affiliated, connected or associated with Beso Lounge & Restaurant, nor worked at, sponsored, or approved of Beso Lounge & Restaurant's goods, services or commercial activities, Defendants nevertheless used Plaintiffs [i]mages in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Beso Lounge & Restaurant." [ECF No. 1 ¶ 102 (emphasis added)].  Thus, Plaintiffs have adequately alleged that Defendants knew, i.e. "were at all times aware," that Plaintiffs were not associated with Beso Lounge and yet used their images in a misleading manner.

As to Defendants' third claim that Plaintiffs' have not adequately pled damages for invasion of privacy by false light, damages is not an element of this cause of action.  *See Restatement 2d of Torts* § 652E (setting out elements of

13

false light invasion of privacy – damages absent); *see also Restatement 2d of Torts* § 652H ("Nominal damages may be awarded when the evidence negatives any substantial harm.") (citing *Cason v. Baskin*, 159 Fla. 31 (1947)).   And, if damages *are* an element of false light invasion of privacy, Plaintiffs have adequately pled them.   "Affiliation with a night club could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with her or drop her as a model."  [ECF No. 1 ¶ 127].

As to Defendants' first assertion that Plaintiffs have asserted "no allegations that the alleged false light of working at or endorsing the events at Beso Lounge & Restaurant would be found 'highly offensive to the reasonable person,'" the Court disagrees.  As another court in this District recently found, Plaintiffs allegations that clients might refuse to hire Plaintiffs due to their perceived affiliation with a night club is evidence that Plaintiffs have at least pled that Defendants' unauthorized use of Plaintiffs' images was highly offensive.  *See Lancaster v. Ecuadorian Inv. Corp.*, No. 3:19-cv-01581 (JAM), 2020 U.S. Dist. LEXIS 65077, at *4-5 (D. Conn. Apr. 14, 2020).

Finally, the Court agrees with Plaintiffs that the false light invasion of privacy tort does not encompass a generalized right to be "let alone," but rather a right to be let alone *by the Defendants*.

14

In sum, because Plaintiffs have adequately pled the essential elements of false light invasion of privacy, the Defendants' Motion to Dismiss Count Four for false light invasion of privacy is DENIED.  *See Geiger*, 424 F. Supp. 3d at 294-95 (denying false light invasion of privacy claims on similar facts); *Lancaster*, 2020 U.S. Dist. LEXIS 65077, at *4-5 (same).

C.   <u>Count Five (Connecticut Unfair Trade Practices Act "CUTPA")</u>

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  It further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action to recover actual damages," punitive damages, and equitable relief.  Conn. Gen. Stat. § 42-110g(a).  An ascertainable loss is "capable of being discovered, observed or established[,]" but only requires the loss to be measurable; it does not need to be a precise dollar amount.  *Di Teresi v. Stamford Health Sys., Inc.*, 149 Conn. App. 502, 509 (2014).

When determining whether a practice violates CUTPA, Connecticut courts consider:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes

15

substantial injury to consumers (or competitors or other businessmen).

*Gaynor v. Hi-Tech Homes*, 149 Conn. App. 267, 275 (2014).

Defendants demand dismissal of Count Five on the sole basis that Plaintiffs have not established that they have suffered an "ascertainable loss," which is a "*threshold barrier*" to recovery under CUTPA.  [ECF No. 32-1 at 13 (quoting *Lindsey v. FMS Inv. Corp.*, No. 3:11-cv-00961, 2012 WL 1309840, at *6 (D. Conn. Apr. 17, 2012)) (emphasis added by Defendants)].  Defendants argue "Plaintiffs' [sic] have failed to allege facts sufficient to establish ascertainable loss" because their only "claim of harm" is:

> 145. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' images on their Club's website and social media accounts, each of Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.
>
> 146. As a result of Defendants' authorized [sic: unauthorized] and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.
>
> (Compl. ¶¶ 145, 146).  The Plaintiffs fail to disclose any fact as to *how* each one was 'injured,' *when* she was 'injured,' or *how* her ability to market herself was 'injured.'  Most importantly, Plaintiffs fail to plead *any* facts of an actual loss incurred as a result of the unauthorized use of their likenesses.

[ECF No. 32-1 at 14 (emphasis provided by Defendants in their Memorandum of Law)].

Plaintiffs counter that Defendants fault them for not "prov[ing] their damages," which is not required at this stage of the case, and that "[a]s this

Court certainly knows, CUTPA is a remedial statute which 'must be liberally construed in favor of those whom the legislature intended to benefit.'"  [ECF No. 36 at 6 (citing *Fink v. Golenbock*, 238 Conn. 183, 213 (1996))].

The complaint alleges Defendants misappropriated Plaintiffs' commercialized images without compensation or their permission for Defendants' pecuniary benefit to advertise and promote Defendants' night club. That action could plausibly constitute unlawful action or could offend an "established concept of unfairness." *Gaynor*, 149 Conn. App. at 275.  Plaintiffs also have plausibly stated that the Defendants posted these advertisements and that these advertisements caused harm or could cause harm to their professional brands.

CUTPA only requires that the loss be "ascertainable," which means "capable of being discovered." *Di Teresi*, 149 Conn. App. at 509.  Plaintiffs allege factual allegations that put the Defendants on notice as to the nature of their claims.  *See* [ECF No. 1 ¶ 29 ("Each of the Plaintiffs' [i]mages was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Beso Lounge & Restaurant."); *id.* ¶ 138 ("Defendants published Plaintiffs' [i]mages on . . . social media accounts in order to create the false impression that Plaintiffs were either working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club."); *id.* ¶

17

141 ("Defendants' advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own [i]mages, and invasion of Plaintiffs' privacy, for Defendants['] commercial benefit."); *id.* ¶ 145 ("As a result of Defendants' unauthorized and misleading publication . . . each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured."). Plaintiffs were also deprived of the commercial value of their images. The extent or amount of damage at this time may be unknown, but the determination of the amount of loss is a fact-based inquiry. Accordingly, dismissal of Plaintiff's CUTPA claim is not warranted solely on this basis.

The Court DENIES Defendants' Motion to Dismiss Count Five. *See Geiger*, 424 F. Supp. 3d at 295-97 (denying motion to dismiss CUTPA claim on similar facts).

### D. <u>Count Seven (Conversion)</u>

"Conversion is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418 (2007). To prevail on a conversion claim, "the party alleging conversion . . . must prove a sufficient property interest in the items in question." *Id.* at 419. The plaintiff's property rights must "have been dealt with in a manner adverse to

18

[her], inconsistent with [her] right of dominion and to [her] harm." *Aetna Life & Cas. Co. v. Union Tr. Co.*, 230 Conn. 779, 791 (1994) (citation omitted).

"In Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, except for those intangible property rights evidenced in a document." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 44 (2000).

Defendants argue that this count must be dismissed because "no Connecticut Court has extended this cause of action to intangible interests, such as these images." [ECF No. 32-1 at 16-17 (citing Connecticut cases and a case of this Court, *Eadie v. McMahon*, Nos. 5:91-cv-00423 (WWE), 5:92-cv-00216 (WWE), 1997 WL 289679, at *16 (D. Conn. Mar. 12, 1997))]. Defendants also argue that "since the Plaintiff admits that '[i]mages [the defendants] misappropriated came from Plaintiff's own social media pages' that have millions of followers, the Plaintiffs have no right of dominion to these images like a piece of property. (Compl., ¶¶ 32, 33, 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72, 75). Therefore, Plaintiffs' cause of action for conversion fails to state a claim upon which relief can be granted, and must be dismissed." [ECF No. 32-1 at 16-17].

Plaintiffs counter that because cases cited by Defendants explain that a claim for conversion can lie when intangible rights are "merged in or identified with some document," Plaintiffs' claim for conversion should not be dismissed because "[e]ach Plaintiff's property rights in their image and likeness [are]

19

merged in or identified with . . . the photograph in which she appears." [ECF No. 36 at 7]. In addition, Plaintiffs argue that Defendants' contention that Plaintiffs lack a "right of dominion" over images taken from Plaintiff's own social media pages "is supported by no authority, legally ridiculous, and tellingly misquotes the Complaint," in that the Complaint only alleges that some, not all, of the images used were taken from Plaintiffs' social media pages. *Id.* The Court agrees with Plaintiffs that they have adequately pled claims for conversion.

First, while the *Eadie* court noted that "no Connecticut case has extended the tort of conversion to intangible interests in and of themselves," 1997 WL 289679, at *16, that case is over 20 years old, conversion of intellectual property and other intangibles has been recognized in other jurisdictions and is expanding as time marches on, and the Connecticut Supreme Court has not ruled to the contrary. *See* 18 Am. Jur. 2d Conversion § 7 (2020) ("Intellectual property can be reduced to a tangible form, which can then be subject to conversion."); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) ("certify[ing] to the New York Court of Appeals the question of whether electronic data, computer programs, or electronic data saved in computer programs can support a claim for conversion" and noting that "assuming conversion is cognizable for electronic data, Thyroff has alleged all of the elements for a claim of conversion as to his personal information, and his claim was improperly dismissed"). The New York Court of Appeals, after surveying the history of conversion and its

20

expansion into the intangible realm, answered the Second Circuit's certification

question in the affirmative:

> The expansion of conversion to encompass a different class of property, such as shares of stock, was motivated by society's growing dependence on intangibles. It cannot be seriously disputed that society's reliance on computers and electronic data is substantial, if not essential. Computers and digital information are ubiquitous and pervade all aspects of business, financial and personal communication activities. Indeed, this opinion was drafted in electronic form, stored in a computer's memory and disseminated to the Judges of this Court via e-mail. We cannot conceive of any reason in law or logic why this process of virtual creation should be treated any differently from production by pen on paper or quill on parchment. A document stored on a computer hard drive has the same value as a paper document kept in a file cabinet. . . . In light of these considerations, we believe that the tort of conversion must keep pace with the contemporary realities of widespread computer use. We therefore answer the certified question in the affirmative and hold that the type of data that Nationwide allegedly took possession of--electronic records that were stored on a computer and were indistinguishable from printed documents--is subject to a claim of conversion.

*Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272, 1277-78 (N.Y. 2007) (citations

omitted); *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2013) ("Conversion was

originally a remedy for the wrongful taking of another's lost goods, so it applied

only to tangible property[, but v]irtually every jurisdiction, however, has

discarded this rigid limitation to some degree. Many courts ignore or expressly

reject it."); *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 305 (7th Cir. 1990)

(holding that defendant could be liable merely for depriving plaintiff of the use of

his confidential information and noting that "[t]here is perhaps no very valid and

essential reason why there might not be conversion of intangible property.");

*Eysoldt v. ProScan Imaging*, 957 N.E.2d 780, 786 (Ohio App. 2011) ("At common law, the general rule was that only tangible chattels could be converted. But the law has changed, and courts have held that identifiable intangible property rights can also be converted.").

Moreover, to the extent that embodiment of intangible rights in a document is required, Plaintiffs have alleged that their intangible rights were reduced to documents, namely, their photographs.

In addition, Defendants allegedly deprived Plaintiffs of the right to choose how their images would be used and of the value of their use, which is all that is required, as each given Plaintiff's property rights must "have been dealt with in a manner adverse to [her], inconsistent with [her] right of dominion and to [her] harm." *Aetna*, 230 Conn. at 791. Here, they allegedly were, as Defendants usurped Plaintiffs' right of ownership over their images by using them without paying for them, thereby depriving Plaintiffs of the value of their use.

Because Plaintiffs have adequately alleged their claim for conversion, the Court DENIES Defendants' Motion to Dismiss Count Seven.

E.   <u>Count Nine (Quantum Meruit)</u>

Quantum meruit is an equitable remedy to provide restitution to a plaintiff for the reasonable value of services provided to a defendant despite an unenforceable contract. *See Walpole Woodworkers, Inc. v. Manning*, 307 Conn. 582, 587 n.9 (2012). A claim for quantum meruit may proceed only if the

defendant accepts plaintiff's services subject to an implied promise or contract to pay for them.  *See Coppola Const. Co. v. Hoffman Enters. Ltd. P'ship*, 157 Conn. App. 139, 160 n.14 (2015).

> Defendants argue that Count Nine should be dismissed because:
>
> Plaintiffs fails [sic] to make allegations that the Plaintiffs rendered services to Defendants, which Defendants knowingly accepted, and thereby impliedly promised to pay Plaintiffs for the services they had rendered.  Instead, the Plaintiffs admit that 'this misappropriation occurred without any Plaintiff's knowledge, consent or authorization.' (Compl., ¶ 31).  A claim for quantum meruit is legally insufficient in the absence of allegations that the plaintiff provided services directly to the defendants, and that the defendants impliedly promised to pay for the same by knowingly accepting services from the plaintiff.

[ECF No. 32-1 at 18-19 (citing *ThyssenKrupp Elevator Corp. v. Workstage, LLC*, No. CV-09-5005826-S, 2010 WL 3585425, at *3 (Conn. Super. Ct. Aug. 19, 2010))]. Because "Plaintiffs have failed to plead allegations which would demonstrate that any of them provided services to Defendants, which Defendants knowingly accepted, such that Defendants impliedly promised to pay any of Plaintiffs for services they had directly provided," Defendants argue that "Plaintiffs' purported claim for quantum meruit is legally insufficient and should be dismissed."  *Id.* at 19.

Plaintiffs counter that "the Complaint . . . clearly alleges an intentional scheme by Defendants to promote their Clubs and increase their revenue by using Plaintiffs' images in advertising, *i.e.,* by having Plaintiffs perform modeling

services for them," and therefore Plaintiffs' Count Nine should not be dismissed. [ECF No. 36 at 8].  The Court disagrees.

As Defendants state, "a claim for quantum meruit is legally insufficient in the absence of allegations that the plaintiff provided services directly to the defendants, and that the defendants impliedly promised to pay for the same by knowingly accepting services from the plaintiff."  [ECF No. 32-1 at 18-19].  This is black letter law, *Walpole Woodworkers*, 307 Conn. at 587 n.9, yet the Complaint does not allege that Plaintiffs "provided services directly to the defendants," nor that Defendants "impliedly promised to pay for the same by knowingly accepting services from the plaintiff."   Because of this, the Court GRANTS Defendants' Motion to Dismiss Count Nine for quantum meruit.  *See Geiger*, 424 F. Supp. 3d at 302-03 (dismissing quantum meruit claim on similar facts).

### F.    Statute of Limitations as to Plaintiffs Hazell, Acosta, and Valencia

Defendants argue that because Plaintiffs Hazell, Acosta, and Valencia's date of publishing of their photographs, as outlined by the exhibits to the Complaint, occurred more than three years prior to the filing of Plaintiffs' Complaint, which represents the maximum applicable statute of limitations, the statute has run, making dismissal for all claims appropriate for these three Plaintiffs.  Specifically, Defendants argue that examination of Complaint Exhibit G shows that Plaintiff Hazell's photograph was published on May 27, 2014, examination of Complaint Exhibit J shows that Plaintiff Acosta's photographs

were published on February 12, 2015 and March 20, 2015, and examination of Complaint Exhibit K shows that Plaintiff Valencia's photographs were published on June 4, 2014 and December 17, 2014, all well outside the maximum applicable statute of limitations of three years, making running of the statute obvious by inspection.  [ECF No. 32-1 at 19-20].

### 1.    Lanham Act Claims (Counts I and II)

Defendants first argue that "[b]ecause the Lanham Act does not prescribe a statute of limitations, federal courts often look to the most appropriate or most analogous state statute of limitation to determine when the presumption of laches applies to Lanham Act claims."  [ECF No. 32 at 20 (quoting *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 745-46 (2d Cir. 2016) (citation and internal quotation marks omitted))].  Defendants argue that "[w]ith respect to the inexcusable delay factor, if the suit is brought outside the statute of limitations period, the delay is presumptively unreasonable. . . .. Because the Lanham Act does not include a statute of limitations, the most analogous statute of limitations applies, which in this case is Connecticut's three-year statute of limitations for fraud."  *Id.* at 20-21 (quoting *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9 (D. Conn. 2009)).  Defendants conclude that "[t]herefore, the applicable statute of limitations for Plaintiffs' First and Second Cause of Actions is three years.  As the most recent alleged publication for each

of these three Plaintiffs was more than three years before the date of filing of the Complaint, their claims under the Lanham Act are time-barred."  *Id.* at 21.

Plaintiffs Hazell, Acosta, and Valencia counter that Defendants' motion fails as a matter of law because "it is a 'long-standing principle' in the Second Circuit that 'laches is not a defense … when the *defendant intended the infringement.*'" [ECF No. 36 at 9 (quoting *CSL Silicones, Inc. v. Midsun Grp., Inc.*, 170 F. Supp. 3d 304, 316 (D. Conn. 2016) (emphasis added by Plaintiffs) (quoting *Hermes, Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000))].  Because Plaintiffs have alleged intentional acts pertaining to their Lanham Act claims, *id.* (quoting Complaint, [ECF No. 1 ¶ 29]), Plaintiffs Hazell, Acosta, and Valencia argue that Defendants' Lanham Act laches claim fails.

As Connecticut District Judge Kari Dooley recently explained in a case where Defendants asserted the exact same motion to dismiss statute of limitations argument against Plaintiffs' Lanham Act claims, the law in this area is unique:

> The Lanham Act contains no statute of limitations but, rather, expressly provides for defensive use of equitable principles, including laches.  A defendant asserting a laches defense must establish that: 1) the plaintiff had knowledge of the defendant's use of its mark; 2) the plaintiff inexcusably delayed taking action with respect to that use; and 3) the defendant would be prejudiced if the court permitted the plaintiff to assert its rights belatedly.  In addition, in Lanham Act cases, the Second Circuit looks to the most appropriate or the most analogous state statute of limitations to ascertain whether the equitable defense of laches bars the plaintiff's claim.  If the most closely analogous state statute of limitations has not run, the presumption of laches does not attach and the

26

> defendant bears the burden of proving the defense.  But once the
> analogous state statute of limitations has run, the burden shifts to
> the plaintiff to show why laches should not apply.  As such, courts
> do not 'apply' statutes of limitations to Lanham Act claims, but . . .
> only . . . use them by analogy to determine who bears the burden of
> proof.

*Gibson v. Metropolis of Conn. LLC*, No. 19-cv-00544 (KAD), 2020 U.S. Dist. LEXIS

33498, at \*9-10 (D. Conn. Feb. 27, 2020) (citations omitted).  In *Gibson*, the Court

noted that Plaintiffs' Lanham Act causes of action accrued pursuant to federal

law "when plaintiff knew or had reason to know of its injury."  *Id.* at \*11.  And,

because Defendants "assert[ed] in a conclusory fashion" that plaintiffs' claims

were time-barred simply because the most recent publication date was outside

the statute of limitations period of three years, their argument was "meritless"

because "it simply assume[d] an accrual date identical to the publication date,"

which was improper because "it [was] not at all clear from the allegations of the

[Complaint] or from the exhibits attached to the . . . complaint at what point

Plaintiffs knew or had reason to know of their alleged harm so as to trigger the

running of the statute of limitations."  *Id.* at \*12 (citing *Slainte Invs. Ltd. P'ship v.

Jeffrey*, 142 F. Supp. 3d 239, 253-54 (D. Conn. 2015) ("a motion to dismiss . . . may

not be granted simply because a complaint failed to include allegations

affirmatively establishing its timeliness")).  Noting that the Complaint exhibits at

issue had 2019 dates, "which raises an inference that Plaintiffs may have learned

of these postings several years after their publication," and that the Complaint

was filed approximately three months later, which "further supported" the

inference, the Court held that "[b]ecause the date that the Lanham Act claims accrued is not clear on the face of the [Complaint], the Court cannot answer the threshold inquiry of whether the analogous statute of limitations has run or accordingly, whether the presumption of laches applies," and denied Defendants' Motion to Dismiss, especially since "even if this determination was possible, it resolves only the question of who bears the burden of proof; it does not answer the ultimate question of whether laches bars the Plaintiffs' claims." *Id.* at *12-13 (citing *CSL Silicones*, 170 F. Supp. 3d at 317 n.11 ("[L]aches is a fact-based inquiry and for that reason, courts rarely resolve the issue at the pleading stage.").

The Court finds the reasoning of *Gibson* as it pertains to the potential dismissal of Plaintiffs Hazell, Acosta, and Valencia's Lanham Act claims persuasive and adopts it as it pertains to the instant matter.  As in *Gibson*, here Defendants simply assert that the "accrual date [is] identical to the publication date" and argue for dismissal thereupon.  But as the *Gibson* Court explained, things are not that easy.  What counts is when Plaintiffs Hazell, Acosta, and Valencia "knew or had reason to know of [their] injury," and "it is not at all clear from the allegations of the [complaint] or from the exhibits attached to the . . . complaint at what point Plaintiffs knew or had reason to know of their alleged harm so as to trigger the running of the statute of limitations."  *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *12.

28

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Counts One and Two Lanham Act claims on statute of limitations grounds is DENIED. *See Gibson*, 2020 U.S. Dist. LEXIS 33498, at *13 (denying motion to dismiss similar Lanham Act claims on statute of limitations grounds).

### 2.    Invasion of Privacy Claims (Counts III and IV)

Plaintiffs Hazell, Acosta, and Valencia assert claims for Invasion of Privacy based on Appropriation of Likeness (Count III) and False Light (Count IV), but Defendants argue that these claims are time-barred given that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." [ECF No. 32 at 21 (citing Conn. Gen. Stat. § 52-577)]. Defendants cite precedent holding that this three-year statute of limitations applies to invasion of privacy claims. *Id.* (citing *Goodrich*, 188 Conn. at 128 and *Jonap*, 1 Conn. App. at 554-57).

Plaintiffs counter that (1) arguing statute of limitations on a motion to dismiss is inappropriate unless "the running of the statute is apparent from the face of the Complaint," [ECF No. 36 at 10-11 (quoting *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 172-73 (D. Conn. 2004)], (2) the continuing course of conduct doctrine allows invasion of privacy claims if the violations are continuing in nature, even if they began outside the statutory period, and (3) because Defendants' social media posts were "pushed down" over time and therefore

were difficult for Plaintiffs to find, the statute of limitations should be equitably tolled.  *Id.* at 11-13.

"'[W]hen the wrong sued upon consists of a continuing course of conduct,' the continuing course of conduct doctrine provides that 'the statute does not begin to run until that course of conduct is completed.'"  *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *14 (quoting *Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 311 (2014)).  This is because "'it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct'—specifically, where '[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events.'"  *Id.* at *15 (quoting *Watts v. Chittenden*, 301 Conn. 575, 587-88 (2011)).

"Plaintiffs may properly invoke the doctrine upon a showing that 'the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty.'"  *Id.* at *15-16 (quoting *Flannery*, 312 Conn. at 313).  "At the second step, 'a finding that a duty continued to exist after the cessation of the act or omission relied upon,' must be established by 'evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.'"  *Id.* at *16 (quoting *Flannery*, 312 Conn. at 312).

Here, Plaintiffs allege that Defendants' use of their images occurred "over time" and that "Defendants[] republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint . . . [and] Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product."  [ECF No. 1 ¶¶ 112, 113, 114].

In Connecticut invasion of privacy claims are subject to the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-577.  *Gallaher v. US Bank Nat'l Ass'n*, No. 3:14-cv-1877 (VLB), 2017 U.S. Dist. LEXIS 73349 (D. Conn. May 15, 2017).  And, although there is a dearth of caselaw in Connecticut applying the continuing course of conduct doctrine to invasion of privacy claims, at least one court in this District has declined to hold that the doctrine is inapplicable to such claims as a matter of law.  *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *20.  The Court follows suit.

As mentioned, to establish "tolling under the continuing course of conduct doctrine, Plaintiffs [Hazell, Acosta, and Valencia] need to demonstrate 'either a special relationship between the parties giving rise to . . . a continuing duty or some later wrongful conduct of a defendant related to the prior act' of the publication of Plaintiffs' images."  *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *20-21 (quoting *Flannery*, 312 Conn. at 312).   Plaintiffs do not plead a special

31

relationship, but they do adequately plead "later wrongful conduct" by Defendants "related to the prior act," in that they allege that Defendants continued to wrongly use the Plaintiffs' images "after the initial date of the posting of their image," with such wrongful use continuing "through the filing of this complaint." [ECF No. 1 ¶¶ 112, 113, 114]. Moreover, Plaintiffs allege that Defendants' "republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product." *Id.* This is enough to invoke the continuing course of conduct doctrine for the purpose of defeating Defendants' Motion to Dismiss Counts Three and Four on statute of limitations grounds. *See Gibson*, 2020 U.S. Dist. LEXIS 33498, at *21-22 (denying Defendants' Motion to Dismiss Plaintiffs' Invasion of Privacy claims on identical grounds).

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Counts Three and Four for Invasion of Privacy on statute of limitations grounds is DENIED.

### 3.    CUTPA (Count V)

The statute of limitations for a CUTPA claim is three years. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). "Connecticut courts have applied the continuing course of conduct doctrine to toll the CUTPA limitations period." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB),

2015 U.S. Dist. LEXIS 158263, at *13 (D. Conn. Nov. 24, 2015).   "As in other instances where the doctrine applies, in order to invoke it as a basis for tolling the statute of limitations on a CUTPA claim, Connecticut courts require 'evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto' as demonstrated by 'either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.'"   *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *25 (quoting *Szynkowicz v. Bonauito-O'Hara*, 170 Conn. App. 213, 229 (2017)).

> The *Gibson* court found as follows:

> As discussed above, Plaintiffs allege that the Defendants continued to reap the profits of their illegal conduct after the images were posted.  This later accumulation of allegedly ill-gotten gains, earned at the Plaintiffs' expense, is even more viable in the context of Plaintiffs' claim under CUTPA, which is designed to remedy deceptive commercial practices.  It will be for the trier of fact to decide whether the Defendants subsequently profited from the original wrong within the applicable statute of limitations.

*Id.* at *25-26 (citing *Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 45 (2d Cir. 2018) (noting that "[t]he continuing course of conduct doctrine is 'conspicuously fact-bound'") (citation omitted), and *Bartold*, 2015 U.S. Dist. LEXIS 158263, at *14 (denying motion to dismiss where "Plaintiff . . . alleged later wrongful acts," which were "related to the alleged deceptive acts occurring prior to the limitations period")).

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Count Five CUTPA Claim on statute of limitations grounds is DENIED.  *See Gibson*, 2020 U.S. Dist. LEXIS 33498, at \*24-25 (denying motion to dismiss CUTPA cause of action on similar grounds).

### 4.    Negligence and *Respondeat Superior* (Count VI)

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  *Murdock v. Croughwell*, 268 Conn. 559, 566 (2004).  It is also well-settled in Connecticut that "under the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment."  *Matthiessen v. Vanech*, 266 Conn. 822, 839 (2003) (citing *Stiebitz v. Mahoney*, 144 Conn. 443, 447 (1957) (emphasis omitted)).

The statute of limitations for negligence claims in Connecticut provides that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, . . . ."  Conn. Gen. Stat. § 52-584.

34

In the negligence count, Plaintiffs allege that "Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights," and that "Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices."  [ECF No. 1 ¶¶ 157, 158].  Plaintiffs also allege that "Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated," and "breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents."  *Id.* ¶ 160.  As mentioned, Plaintiffs additionally allege that Defendants' use of their images occurred "over time" and that "Defendants[] republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint . . . [and] Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product."  *Id.* ¶¶ 112, 113, 114.

The Connecticut Supreme Court "has recognized the continuing course of conduct doctrine in many cases involving claims sounding in negligence," *Watts*, 301 Conn. at 583, and here, Plaintiffs adequately plead that Defendants' alleged

35

negligence, even if it began well before the applicable statute of limitations ran, continued "well after the original wrong," and is therefore, "sufficient to allege the application of the continuing course of conduct doctrine." *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *30.

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Count Six Negligence and *Respondeat Superior* Claims on statute of limitations grounds is DENIED. *See Gibson*, 2020 U.S. Dist. LEXIS 33498, at *30 (denying negligence and *respondeat superior* claims on statute of limitations grounds on similar facts).

### 5.      Conversion (Count VII)

Connecticut applies the general three-year statute of limitations for tort actions to conversion claims. *See Stuart & Sons, L.P. v. Curtis Publ. Co.*, 456 F. Supp. 2d 336, 343 (D. Conn. 2006). Connecticut courts also apply the continuing course of conduct doctrine to conversion claims, *see, e.g., Jarvis v. Lieder*, 117 Conn. App. 129, 148-49 (2009), and the Court concludes that Plaintiffs have invoked the doctrine by pleading a subsequent wrong in the form of Defendants' alleged unlawful and ongoing accrual of profits from Plaintiff's images, for the reasons discussed previously.

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Count Seven Conversion Claims on statute of limitations grounds is DENIED.

*See Gibson*, 2020 U.S. Dist. LEXIS 33498, at *30-32 (denying conversion claims on statute of limitations grounds on similar facts).

 6. **Unjust Enrichment (Count VIII)[1]**

 "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Providence Elec. Co. v. Sutton Place, Inc.*, 161 Conn. 242, 246 (1971) (quoting *Cecio Bros., Inc. v. Town of Greenwich*, 156 Conn. 561, 564 (1968)). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283 (1994) (quoting *Polverari* v. *Peatt,* 29 Conn. App. 191, 200-01 (1992)).

 "Statutes of limitations do not apply in a strict fashion to causes of action arising in equity." *Gov't Emps. Ins. Co. v. Barros*, 184 Conn. App. 395, 399 (2018) (citing *Dunham v. Dunham*, 204 Conn. 303, 326 (1987)). "[A] party asserting a claim sounding in equity may be barred from seeking equitable relief by the defense of laches, which applies only if there has been an unreasonable,

---

[1] As the Court dismisses Plaintiffs' claims for Quantum Meruit (Count IX) *in toto*, it need not discuss them here.

inexcusable and prejudicial delay in bringing suit." *Id.* at 400-01 (citing *Dunham*, 204 Conn. at 327).

Defendants argue that "Plaintiffs offer no explanation as to why they delayed the filing of their claims" and that "Defendants are severely prejudiced by being called to defend themselves against years old claims," [ECF No. 32-1 at 24], but the problem for Defendants is that "'laches is a fact-based inquiry" that 'courts rarely resolve . . . at the pleading stage.'" *Gibson*, 2020 U.S. Dist. LEXIS 33498, at *34 (denying motion to dismiss unjust enrichment claim on statute of limitations grounds on similar facts).  Here, as in *Gibson*, it is not clear as a matter of law that Plaintiffs Hazell, Acosta, and Valencia unreasonably delayed in bringing suit for unjust enrichment.

Defendants' Motion to Dismiss Plaintiffs Hazell, Acosta, and Valencia's Count Eight Unjust Enrichment Claim on statute of limitations grounds is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 32], is GRANTED-IN-PART.   Count Nine for Quantum Meruit is DISMISSED with prejudice.  Defendants' Motion to Dismiss the remaining counts is DENIED and Plaintiff's Counts One through Eight will go forward.  Additionally, as the Court determines that the Parties may benefit from participation in a settlement

conference, the Clerk is directed to refer this case to a Magistrate Judge for the purpose of holding a settlement conference.

IT IS SO ORDERED

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 4, 2020.